UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

ANNA GARZA,

    Plaintiff,

v.                                                  Case No: 2:17-cv-391-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

## **OPINION AND ORDER**

This cause comes before the Court on Plaintiff Anna Garza's Complaint, filed on July 13, 2017. (Doc. 1). Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claims for a period of disability, disability insurance benefits, and supplemental security income. The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint memorandum detailing their respective positions. For the reasons set out herein, the decision of the Commissioner is **REVERSED** and **REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

**I.    Social Security Act Eligibility, Procedural History, the ALJ's Decision, and Standard of Review**

    **A.    Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve

months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.[1] The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.  Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

    B.     **Procedural History**

    Plaintiff filed applications for a period of disability, disability insurance benefits, and supplemental security income with an alleged onset date of January 31, 2014.  (Tr. at 214, 218). Plaintiff's applications were denied initially on July 9, 2014 and upon reconsideration on October 14, 2014.  (Tr. at 49-50, 83-84).  A video hearing was held before Administrative Law Judge ("ALJ") Christopher L. Dillon on May 16, 2016.  (Tr. at 33-48).  The ALJ issued an unfavorable decision on June 2, 2016.  (Tr. at 7-32).  The ALJ found Plaintiff not to be under a disability from January 31, 2014 through the date of the decision.  (Tr. at 25).

    On June 13, 2017, the Appeals Council denied Plaintiff's request for review.  (Tr. at 1-6). Plaintiff filed a Complaint on July 13, 2017.  (Doc. 1).  Defendant filed an Answer on September 26, 2017.  (Doc. 13).  The parties filed a Joint Memorandum setting forth their positions and arguments on the issues.  (Doc. 20).  The parties consented to proceed before a United States Magistrate Judge for all proceedings.  (*See* Doc. 18).  This case is ripe for review.

---

[1] The Court notes that the Social Security regulations were recently revised.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017). Unless otherwise specified, the Court refers to the regulations in effect at the time of the Administrative Law Judge's decision.

### C. Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled. *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).[2] An ALJ must determine whether the claimant: (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) has the residual functional capacity ("RFC") to perform her past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

As an initial matter, the ALJ found that Plaintiff met the insured status requirements through September 30, 2019. (Tr. at 12). At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 31, 2014, the alleged onset date. (*Id.*). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: "arthritis (right shoulder), obesity, respiratory disorder, seizure disorder, affective disorder, anxiety-related disorder." (Tr. at 13). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart. P, Appendix

---

[2] Unpublished opinions may be cited as persuasive on a particular point. The Court does not rely on unpublished opinions as precedent. Citation to unpublished opinions on or after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P. Unpublished opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Tr. at 13-14).

Based on the evidence, the ALJ determined that Plaintiff had the RFC to perform work that:

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds; pushing or pulling similar amounts; standing, walking, and sitting for 6 hours each; no climbing of any kind; no balancing or ambulating on uneven terrain or surfaces; no more than occasional ability to perform all other postural activity; no more than frequent reaching and handling (and no overhead reaching) with the non-dominant right upper extremity; no exposure to hazards, such as [dangerous moving] machinery and unprotected heights; no operation of a commercial or motor vehicle; no more than occasional exposure to environmental extremes, such as dust, gas, fumes, heat, cold, humidity; no more than occasional interaction with supervisors, coworkers, and the public; and no more than simple, routine tasks without assembly-line production.

(Tr. at 17).

At step four, the ALJ made no findings regarding past relevant work. (Tr. at 24). Specifically, the ALJ noted that 20 C.F.R. §§ 404.1520(h) and 416.920(h) "provide an expedient for adjudicators to proceed immediately to step 5. This is such a case where expediting step 4 is appropriate; the finding at step 4 in this case is not material because all applicable grid rules (Medical-Vocational Guidelines) would direct a finding of not disabled." (*Id.*). The ALJ stated that, "[a]s discussed below, by either direct application or by testimony and framework of the grid rules, the claimant is not disabled." (*Id.*).

At step five, considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. (*Id.*). Specifically, the ALJ asked a vocational expert ("VE") whether jobs exist in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. (Tr. at 25). The VE testified that someone with Plaintiff's age, education, work

4

experience, and RFC would be able to perform the requirements of representative occupations, such as:

>    1. Stock Checker (*Dictionary of Occupational Titles* (DOT) code 299.667-014), with approximately 248,000 jobs nationally;
>
>    2. Assembler (small products) (DOT code 706.684-022), with approximately 194,000 jobs nationally; and
>
>    3. Mailroom Clerk (non-postal) (DOT code 209.687-026), with approximately 56,000 jobs nationally.

(*Id.*).

Pursuant to Social Security Ruling 00-4p, the ALJ determined that the VE's testimony was consistent with the information contained in the *Dictionary of Occupational Titles*. (*Id.*). Based on the VE's testimony, the ALJ found that Plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (*Id.*). As a result, the ALJ determined that a finding of "not disabled" was appropriate. (*Id.*).

Accordingly, the ALJ concluded that Plaintiff was not under a disability from January 31, 2014, through the date of the decision. (*Id.*).

### D.    Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla; *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.

*Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine reasonableness of factual findings).

## II. Analysis

Plaintiff raises three issues on appeal:

1. Whether the ALJ adequately considered the statement of treating neurologist Dr. Geslani, consistent with the requirements of 20 C.F.R. §§ 404.1527, 416.927; SSR 96-2p.;

2. Whether the [RFC] assessment adequately addresses the Plaintiff's right shoulder impairment and seizure disorder and is supported by substantial evidence in the record as a whole, as required by 20 C.F.R. §§ 404.1545(a), 416.945(a); and

3. Whether the ALJ fairly and fully developed the administrative record within the meaning of 20 C.F.R. §§ 404.1512(d), 416.912(d) when he did not admit evidence of the Plaintiff's approval for disability benefits through the State of Florida retirement system into the record.

(Doc. 20 at 14, 21, 28). The Court evaluates these issues in turn below.

### A. Whether the ALJ Properly Considered Dr. Randolph Geslani's Medical Opinions

The Court first addresses Plaintiff's argument that the ALJ erred in his evaluation of Dr. Randolph Geslani's medical opinion evidence.

6

The Social Security regulations define medical opinions as statements from physicians, psychologists, or other acceptable medical sources that reflect judgments about the nature and severity of impairments, including symptoms, diagnosis and prognosis, what a claimant can still do despite impairments, and physical or mental restrictions. 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). When evaluating a medical opinion, the ALJ considers various factors, including: (1) whether the doctor has examined the claimant; (2) the length, nature, and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's opinion is with the record as a whole; and (5) the doctor's specialization. *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)).

An ALJ is required to consider every medical opinion. *Bennett v. Astrue*, No. 308-cv-646-J-JRK, 2009 WL 2868924, at *2 (M.D. Fla. Sept. 2, 2009) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)). Additionally, the Eleventh Circuit has stated that an ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). Otherwise, the Court has no way to determine whether substantial evidence supports the ALJ's decision, and the Court will not affirm simply because some rationale might have supported the ALJ's conclusion. *See id.* Nonetheless, an incorrect application of the regulations will result in harmless error if a correct application of the regulations would not contradict the ALJ's ultimate findings. *Denomme*, 518 F. App'x at 877-78 (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)).

The Eleventh Circuit has further held that the opinion of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary. *Phillips*, 357 F.3d at 1240-41 (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). Good

cause exists when: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the doctor's own medical records. *Id.* Moreover, an "ALJ may reject any medical opinion if the evidence supports a contrary finding." *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 526 (11th Cir. 2015) (quoting *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987)).

Plaintiff argues that the ALJ improperly considered the opinions of her treating neurologist, Dr. Geslani. (Doc. 20 at 14-17). Specifically, Plaintiff argues that Dr. Geslani established a treating physician relationship with Plaintiff throughout the relevant time period. (*Id.* at 15). In pertinent part, Plaintiff notes that Dr. Geslani completed a Treating Source Seizure Questionnaire where he stated that Plaintiff had a seizure disorder characterized by "complex partial seizures," was compliant with prescribed treatment, and had experienced six seizures in the last three months. (*Id.* at 15-16 (citing Tr. at 433-34)). Plaintiff also points out that Dr. Geslani's primary diagnosis for Plaintiff during the relevant time period was "[g]eneralized tonic-clonic seizures, most possibly idiopathic." (*Id.* at 15 (citing Tr. at 492)).

Plaintiff argues that, while the ALJ noted Dr. Geslani's findings, he failed to assign a weight to them. (*Id.* at 16 (citing Tr. at 20)). Plaintiff contends that the ALJ's statement that "the evidence from that time fails to depict a typical seizure pattern, including all associated phenomena, regardless of the alleged frequency of the episodes," shows that the ALJ found Dr. Geslani's opinion invalid and that he substituted his own "hunch" in place of Dr. Geslani's medical opinions. (*Id.* at 16-17 (citing Tr. at 20)). Plaintiff contends that the ALJ is not qualified to make the determination of whether Plaintiff displays a "typical seizure pattern" and

8

that his findings, regarding both Plaintiff's treatment and Dr. Geslani's medical opinion, are not supported by substantial evidence. (*Id.* at 17).

Plaintiff contends that, if the ALJ properly considered Dr. Geslani's medical opinion, then it would be evident to the ALJ that Plaintiff cannot work on a full-time basis without excessive absences. (*Id.*). Thus, Plaintiff argues that, if the ALJ had properly considered Dr. Geslani's findings, then he would have come to a different conclusion regarding whether Plaintiff could work full time. (*See id.*). Plaintiff argues, therefore, that the ALJ committed harmful error warranting remand. (*See id.*).

In response, Defendant argues that the ALJ did not improperly assess Dr. Geslani's medical opinions. (*Id.*). Instead, Defendant argues that the ALJ acknowledged Dr. Geslani's opinions and made findings consistent with them. (*Id.*). For instance, because the ALJ found Plaintiff's seizure disorder to be a severe impairment, Defendant contends that the ALJ accepted Dr. Geslani's statements. (*Id.* at 18 (citing Tr. at 13)). Additionally, Defendant notes the ALJ's statements that "there is certainly evidence of a type of seizure-related disorder" and "the evidence establishes the presence of legitimate seizure-type episodes." (*Id.* (citing Tr. at 19, 23)). Based on these statements, Defendant argues that the ALJ's finding that the "evidence from that time fails to depict a typical seizure pattern" does not reject any of Dr. Geslani's findings. (*Id.*). Instead, Defendant argues that this finding by the ALJ is a correct observation of Dr. Geslani's notes, which notes failed to provide detail about Plaintiff's seizure activity. (*Id.*).

Further, Defendant points to Dr. Geslani's records from January and February 2014, where Dr. Geslani states that Plaintiff's abnormal movements "did not sound like epileptic seizures" and "there was a question of whether [Plaintiff] had an epileptic seizure." (*Id.* at 18-19 (citing Tr. at 308-09, 312)). Defendant argues that these records indicate that a detailed

9

description of a typical seizure for Plaintiff was lacking and that Dr. Geslani himself questioned whether Plaintiff was experiencing epileptic seizures. (*Id.* at 19).

Additionally, Defendant points to the Listing for epilepsy to show that the ALJ was required to determine whether Plaintiff's condition was "documented by [a] detailed description of a typical seizure pattern, including all associated phenomena." (*Id.* (citing Listings 11.00A, 11.02, 11.03)). By following the language of the Listing, Defendant argues that the ALJ did not err by noting that a detailed description of a "typical seizure pattern" for Plaintiff was not located within the record. (*See id.* (citations omitted)).

In sum, Defendant contends that any error with the ALJ's analysis of Dr. Geslani's opinion was harmless because the ALJ's decision was consistent with Dr. Geslani's medical opinions. (*Id.* at 20). Indeed, Defendant argues that remand is unwarranted because the ALJ did not reject Dr. Geslani's medical opinions but, rather, made a decision consistent with his opinions by finding that Plaintiff's seizure disorder was a severe impairment and by imposing appropriate limitations in the RFC assessment. (*Id.* (citing Tr. at 17, 19, 23)).

In this instance, although the ALJ notes Dr. Geslani's medical opinions in his decision, the ALJ never explicitly states the weight given to any of Dr. Geslani's medical opinions. The Court finds that the ALJ erred by failing to assign a weight to Dr. Geslani's medical opinions. *See Winschel*, 631 F.3d at 1179. Moreover, after a careful review of the medical evidence of record, the Court cannot find that this error is harmless because the ALJ's findings do not appear to the Court to be entirely consistent with Dr. Geslani's medical opinions. *Cf. Colon v. Colvin*, 660 F. App'x 867, 870 (11th Cir. 2016) (medical opinion was consistent with ALJ's decision, therefore error of not stating weight to physicians' opinion was harmless); *Denomme*, 518 F. App'x at 878 (any error with ALJ's consideration of medical opinions was harmless where RFC

assessment was consistent with the physician's opinions); *Shaw v. Astrue*, 392 F. App'x 684, 686-87 (11th Cir. 2010) (finding no reversible error where ALJ did not state weight given to examining physician's opinion and RFC finding was not inconsistent with opinion). Instead, it appears that the ALJ made findings that are inconsistent with Dr. Geslani's seizure diagnosis.

For instance, Dr. Geslani treated Plaintiff during the relevant time period and diagnosed Plaintiff on multiple occasions with generalized tonic-clonic seizures. (*See, e.g.*, Tr. at 496, 752). Additionally, in the Treating Source Seizure Questionnaire dated May 23, 2014, Dr. Geslani states that Plaintiff had six seizures in the last three months, which is *an average* of two per month. (Tr. at 433-34). In his decision, however, the ALJ ultimately found that Plaintiff would not be absent from work due to seizures more than twice per month. (*See* Tr. at 20).

As a treating physician, the regulations require that Dr. Geslani's opinions be given substantial or considerable weight unless "good cause" is shown to the contrary. *See Phillips*, 357 F.3d at 1240-41. Yet the Court does not know what weight the ALJ gave Dr. Geslani's opinions because the ALJ failed to state as much in his decision. Moreover, given that the ALJ the ultimately found that Plaintiff would not be absent from work due to seizures more than twice per month, it appears that the ALJ discounted Dr. Geslani's medical opinions, including his opinion that Plaintiff had *an average* of two seizures per month.

As a result, the distinct possibility exists that, had the ALJ properly complied with the regulations, then ultimate result could differ. Accordingly, because it appears that the ALJ's ultimate findings are not consistent with Dr. Geslani's medical opinions as Plaintiff's treating physician, remand is warranted for the ALJ to state the weight given to Dr. Geslani's medical opinion and the reasons therefor. *Cf. Colon*, 660 F. App'x at 870.

To be clear, the Court is not requiring the ALJ to reach a different conclusion. Indeed, the ALJ may find that certain inconsistencies with Dr. Geslani's records – such as the one pointed out in his decision that Dr. Geslani noted Plaintiff's left shoulder was impaired, but other doctors noted Plaintiff's right shoulder was impaired – provide good cause to discount his opinions. (*See* Tr. at 20 (citing Tr. at 483, 492)). Even so, the ALJ never expressly discounts Dr. Geslani's seizure disorder findings, including his finding as to the frequency of the seizures. Because the ALJ did not provide good cause for discounting Dr. Geslani's opinions and because the Court cannot be certain that a correct application of the regulations would not alter the outcome here, the Court cannot affirm the ALJ's decision. *Cf. Denomme*, 518 F. App'x at 878. Moreover, the Court declines to affirm the ALJ's decision simply because some other rationale might have supported the ALJ's conclusion. *See Winschel*, 631 F.3d at 1179.

In sum, the ALJ erred in reviewing the opinion evidence of record. The Court, therefore, reverses and remands the decision of the Commissioner on this issue.

### B. Plaintiff's Remaining Arguments

Plaintiff's remaining arguments focus on a number of issues that cannot be resolved until it is clear to the Court that the ALJ properly considered the entire medical evidence of record, including specifically a re-evaluation of Dr. Randolph Geslani's medical opinions. Indeed, the other two issues raised by Plaintiff regarding the RFC and the duty to fully develop the record may be impacted by a re-evaluation of the medical opinions. Moreover, a re-evaluation of Dr. Geslani's medical opinions may impact the analysis of other elements of the ALJ's decision. As a result, the Court finds that any ruling on Plaintiff's remaining arguments is premature at this time. Upon remand, the ALJ must reevaluate the entire medical evidence of record in evaluating Plaintiff's case.

**III.     Conclusion**

Upon consideration of the submissions of the parties and the administrative record, the Court finds that the decision of the ALJ is not supported by substantial evidence.

Accordingly, the Court hereby **ORDERS** that:

1) The decision of the Commissioner is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for the Commissioner (1) to reevaluate the medical opinion evidence and (2) to review the entire medical evidence of record.

2) The Clerk of Court is directed to enter judgment accordingly, terminate any pending motions and deadlines, and close the case.

3) If Plaintiff prevails in this case on remand, Plaintiff must comply with the Order (Doc. 1) entered on November 14, 2012, in Misc. Case No. 6:12-mc-124-Orl-22.

**DONE AND ORDERED** in Fort Myers, Florida on August 10, 2018.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties